Lodged Proposed
Order

FILED

2010 APR 13 AM 11:00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  **ROME & ASSOCIATES, A.P.C.**
Eugene Rome (SBN 232780)
2  erome@romeandassociates.com
1801 Century Park East, Suite 475
3  Los Angeles, California 90067
Telephone: (310) 282-0690
4  Facsimile: (310) 282-0691

5  Attorneys for Plaintiff SUPER-KRETE
INTERNATIONAL, INC.

6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   SUPER-KRETE INTERNATIONAL, INC., a California corporation, | CASE NO.: CV10-1966 MMM (AGRx) |
| 12 | ***EX PARTE* APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER** |
| 13         Plaintiff, | **OF THE DOMAIN NAME <SUPERCRETE.COM> BY** |
| 14      vs. | **DEFENDANTS** |
| 15   ROD SADLEIR, an individual, and | **[MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF** |
| 16   CONCRETE SOLUTIONS, INC., a California corporation, | **TRACEY HOLWITZ; DECLARATION OF EUGENE ROME]** |
| 17 | |
| 18         Defendants. | |

19                                    ORIGINAL

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ........................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................1

I.     INTRODUCTION.................................................................1

II.    BACKGROUND...................................................................2

III.   THE LEGAL STANDARD FOR ISSUANCE OF A
PRELIMINARY INJUNCTION...........................................5

IV.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY
IN SUPER-KRETE'S FAVOR...............................................6

     A.    Plaintiff Faces Enormous Irreparable Injury If
Interim Relief is Denied............................................6

     B.    Defendants Face No Irreparable Injury From the
Granting of the Requested Interim Relief.................7

     C.    The Public Interest Favors Issuance of the
Requested Injunction ...............................................7

V.    THE LIKELIHOOD OF PLAINTIFF'S SUCCESS ON
THE MERITS IS EXTREMELY HIGH ...............................8

     A.    Super-Krete Is Likely to Succeed on the ACPA
Claim.....................................................................12

VI.   SUPER-KRETE REQUIRES THIS TRO TO ISSUE
WITHOUT ANY PRIOR NOTICE SO AS TO
PRESERVE THE STATUS QUO ANTE AND
PREVENT THE POSSIBILITY THAT DEFENDANTS
DEPRIVE THE COURT OF ITS ABILITY TO
ADJUDICATE THIS CONTROVERSY ............................16

VII.  BOND.................................................................................17

VIII. CONCLUSION ..................................................................18

1

# TABLE OF AUTHORITIES

2

3

**CASES**

Page

4    *AMF Inc. v. Sleekcraft Boats, et al.*, 599 F.2d 341, 348-49 (9th Cir. 1979) .............11

5    *Apple Computer, Inc. v. Formula Intern, Inc.* 725 F.2d 521, 526 (9th Cir. 1984)....11

6
     *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services*,
7        425 F.3d 964, 971 (11th Cir. 2005).........................................................................17

8    *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 827 (9th Cir. 1997) .........7

9    *California ex rel Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319,
10       1326 (9th Cir. 1985).............................................................................................18

11   *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999).........6

12   *E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.*, 756 F.2d
13       1525 (11th Cir. 1985) ............................................................................................6

14   *Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291 (9th Cir. 2003).............5

15   Fed.R.Civ.P. 65(d) ..................................................................................................18

16   *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000)...........6, 11

17   *Green Prod. Co. v. Independence Corn By-Prods. Co.*, 992 F.Supp. 1070, 1080
18       (N.D. Iowa 1997)...................................................................................................9

19   *International Order of Job's Daughters v. Linderburg & Co.*, 633 F.2d 912, 918
20       (9th Cir. 1980) .......................................................................................................8

21   *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.* 559 F.3d 985,
22       989 (9th Cir. 2009) ...............................................................................................11

23   *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936 n.6 (9th Cir. 2002)
24       .........................................................................................................................10, 11

25   *Savin Corp. v. Rayne*, 2001 U.S. Dist. LEXIS 20581, 14-15 (D. Mass. 2001)...........8

26   *Schmidheiny v. Weber*, 319 F.3d 581, 582 (3rd Cir. 2003) .......................................7

27   *Shields v. Zuccarini*, 254 F.3d 476, 481 (3rd Cir. 2001)............................................8

28

ii

*Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994) ....5

*Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc.* 823 F.Supp. 1077, 1086 (S.D.N.Y., 1993)....................................................................................10, 11

*Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir. 1963), *cert. denied*, 375 U.S. 821 (1963)....................................................................17

*Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 599 (6th Cir. 1991) ...............6

**STATUTES**

15 U.S.C. § 1114....................................................................................8, 9

15 U.S.C. § 1116..............................................................................12, 16

15 U.S.C. § 1125(a) ..............................................................................8, 9

15 U.S.C. § 1125(c) ..............................................................................8, 9

15 U.S.C. § 1125(d) ..........................................................................7, 8, 12

15 U.S.C. § 1125(d)(1) ......................................................................13, 16

15 U.S.C. § 1125(d)(1)(B)........................................................................13

15 U.S.C. § 1125(d)(1)(C)..............................................................1, 12, 16

**OTHER AUTHORITIES**

*RE/MAX International, Inc. v. Real-Net Advertising, Inc.*  Claim Number: FA03120002153 ..................................................................................11

**REGULATIONS**

65 Fed.Reg. 10763, 10764 ......................................................................7

**DOCKETED CASES**

*Chernow Communications, Inc. v. Kimball*, D 2000-0119 (WIPO May 18, 2000)..11

*EX PARTE* **APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

## MEMORANDUM OF POINTS AND AUTHORITIES

By this *ex parte* application, Plaintiff Super-Krete International, Inc. ("Plaintiff" or "Super-Krete"), by and through its undersigned attorneys, applies for a temporary restraining order to prevent Defendants Rod Sadleir ("Sadleir") and Concrete Solutions, Inc. ("Concrete Solutions") (collectively, "Defendants") from transferring <supercrete.com> (the "Infringing Domain"), which consists of Super-Krete's trademark, "Super-Crete," to any third parties (the "Application"). Super-Krete also requests the Court to set an order to show cause re issuance of a preliminary injunction enjoining Defendants from transferring the Infringing Domain pending resolution of this Action.

Super-Krete requests the Court to issue the temporary restraining order without prior notice to the Defendants so as to prevent Defendants from transferring the Infringing Domain to third parties, as they stated they may do, and thereby deprive this Court and Super-Krete from obtaining the sought relief, which includes a transfer of the Infringing Domain under 15 U.S.C. § 1125(d)(1)(C).

## I.    INTRODUCTION

On March 18, 2010, Super-Krete filed the instant action against Defendants seeking an injunction and money damages for trademark infringement, trade name infringement, unfair competition, trademark dilution and cyberpiracy under federal, state and common law in connection with Defendants' wrongful use of the designation "supercrete" embodied in the Infringing Domain, consisting of Super-Krete's trademark.

On April 7, 2010, Super-Krete's attorney, Eugene Rome, spoke with Defendants' attorney, Eric Bjorgum. Declaration of Eugene Rome ("Rome Decl.") ¶ 5. In that conversation, Mr. Bjorgum explained that his clients were receiving offers from third parties, some of whom were abroad and that Defendants may sell the Infringing Domain. *Id.* In an e-mail to Mr. Bjorgum, Mr. Rome proposed that

1  Defendants stipulate to an order restricting Defendants from transferring the
2  Infringing Domain pending resolution of the Action. Exhibit ("Exh.") "A," Rome
3  Decl. ¶ 5. Mr. Bjorgum responded that Defendants were unwilling to so stipulate as
4  his client "will surely be able to find someone who is willing to negotiate." Exh.
5  "B," Rome Decl. ¶ 6.

6      Super-Krete would be irreparably harmed in the event that the Infringing
7  Domain is transferred to a third party, particularly a foreign one. It would be forced
8  to relitigate this case against another party, all the while suffering from the
9  continued infringement of its trademarks by the ultimate purchaser of the Infringing
10  Domain. For that reason, Super-Krete respectfully requests the Court to enter a
11  temporary restraining order, preventing any transfer of the Infringing Domain until
12  the OSC re issuance of a preliminary injunction calling for this relief.

13  **II.    BACKGROUND**

14      Super-Krete is a California company, specializing in sale of products,
15  including cementitious, ready-mix materials, paints, overlays, water based color
16  stains and sealer, for the repair and restoration of existing concrete. The company
17  was originally founded in the early 1980s by John Holwitz, under a different name,
18  and has since flourished into the Super-Krete of today, marketing and selling
19  superior products and services worldwide in North America, Asia, Europe, Australia
20  as well as the Pacific and Caribbean Islands. Declaration of Tracey J. Holwitz
21  ("Holwitz Decl.") ¶ 3.

22      Super-Krete owns federal trademark registrations for the marks "Super-
23  Crete," "Super-Krete," and "Super-Krete Products" and Design, United States
24  Trademark Registration Nos. 2,375,309, 2,377,606 and 2,589,070, used in
25  connection with the marketing and sale of various products, including concrete
26  additives and admixtures for concrete renovation, resurfacing and decorating; and
27  concrete sealer coatings, surface coatings, color stains, paints and curing agents for

28

1    concrete renovation, resurfacing and redecorating (collectively, the "Super-Krete
2    Marks"). Exh. "A," Holwitz Decl. ¶ 4. Super-Krete has used the Super-Krete
3    Marks in commerce as early as 1985. *Id.*

4        With respect to the "Super-Crete" mark, Super-Krete's principal, John L.
5    Holwitz, obtained the registered trademark for the term "Super-Crete" on April 14,
6    1995, through an assignment from its previous holder, Loren Hale, which rights
7    Super-Krete has continuously exploited to date. Exh. "B," Holwitz Decl. ¶ 5. A
8    true and correct copy of Super-Krete's product labels bearing the Super Crete
9    designation is attached as Exhibit "C" to the Holwitz Decl.

10       Super-Krete has spent a substantial amount of time, money and resources to
11   promote, advertise and protect its respective marks and has developed valuable
12   goodwill and an outstanding reputation in the Super-Krete Marks.

13       Super-Krete promotes its products under the Super-Krete Marks in its
14   promotional literature, at trade shows and on its website. Notably, a number of
15   other domain names owned and operated by Super-Krete corresponding to the
16   Super-Krete Marks, including the domains <super-crete.com>, <super-krete.com>,
17   <supercrete.ca> and <super-crete.ca> all "point" to the website. A true and correct
18   copy of the www.super-krete.com home page (printed March 11, 2010) is attached
19   as Exhibit "D" to the Holwitz Decl.

20       Concrete Solutions' principal, Sadleir, became acquainted with Super-Krete's
21   founder, John Holwitz, in the early 1980's, while Sadleir was operating J&S Asphalt
22   Paving Stealing and Stripping Company. This limited business relationship did not
23   mature into any further dealings. However, Super-Krete is informed and believes
24   and based thereupon alleges that Sadleir continued to monitor the business activity
25   of Mr. Holwitz and his company, Super-Krete. Indeed, Super-Krete and Concrete
26   Solutions are located less than seventeen (17) miles away from each other and are
27   actively competing in the concrete sealant market both locally, nationally and

28

1  internationally.  Consequently, when Super-Krete developed the current version of

2  its sealing products and began marketing them under the name "Super-Crete" in

3  1985, Sadleir was aware of the product line and the marketing activity.  *See id.*

4        On or about March 17, 1999, and well after the "Super-Crete" mark gained

5  notoriety, Sadleir registered the Infringing Domain and pointed it to his own

6  website, offering competing products, at www.concrtesolutions.com.  A true and

7  correct copy of the concretesolutions.com homepage currently appearing at the

8  Infringing Domain is attached as Exhibit "E" to the Holwitz Decl.

9        On April 7, 2010, and after the filing of the Complaint in this Action, Super-

10  Krete's attorney, Eugene Rome, prepared the following request to Defendants which

11  he e-mailed to their counsel, Mr. Bjorgum:

12              Next, you mentioned in our conversation that your clients

13              were   considering   the   option   of   selling   the

14              <supercrete.com> domain to some unidentified foreign

15              third party. As I am sure you would agree, doing so with

16              the above action pending would complicate its resolution.

17              For that reason, I would like to propose that the parties

18              enter into a stipulation pursuant to which defendants

19              would agree to maintain this domain name in their own

20              name and desist from transferring it until the resolution of

21              this action.  I respectfully request that you provide a

22              response to this item by no later than noon tomorrow.

23  A true and correct copy of that e-mail is attached as Exhibit "A" to the Rome Decl.

24        Mr. Bjorkum:

25              My client is not amenable to agreeing that it cannot sell its

26              domain name to whomever it chooses.  There are many

27              companies using variations on the term Super Crete. As I

28

*EX PARTE* **APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE
DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

1       said yesterday, we gave you the chance to buy it, and you

2       haven't offered anything, instead answering with an overly

3       aggressive litigation posture following a sound ruling by a

4       WIPO panelist.  We may not get the full $15,000 from

5       another company, but we will surely be able to find

6       someone who is willing to negotiate.  That offer is off the

7       table anyway as my client would need to be compensated

8       for attorneys fees.  If we transfer the domain, you still

9       have your case for damages, but I think your client will be

10      sadly disappointed on the numbers.

11  A true and correct copy of that e-mail is attached as Exhibit "B" to the Rome Decl.

12     This Application follows.

13  **III.   THE LEGAL STANDARD FOR ISSUANCE OF A**

14        **PRELIMINARY INJUNCTION**

15     In this Circuit, the law is well established that a preliminary injunction should

16  issue:

17       "if the plaintiff demonstrates *either* a combination of

18       probable success on the merits and the possibility of

19       irreparable injury, or that serious questions are raised and

20       the balance of hardships tips sharply in his favor."

21  *Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291 (9th Cir. 2003).

22     A "serious question" is one for which the moving party has a "fair chance" of

23  success on the merits.  *Stanley v. University of Southern California*, 13 F.3d 1313,

24  1319 (9th Cir. 1994).  As will be shown, this is a case where the moving party will

25  be able to demonstrate *both* probable success on the merits and serious questions

26  with a balance of hardships tipping decidedly in its favor.

27

28

## IV.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN SUPER-KRETE'S FAVOR

### A.   Plaintiff Faces Enormous Irreparable Injury If Interim Relief is Denied

Super-Krete lacks a legal remedy and will suffer irreparable harm if a temporary restraining order is not issued ordering Defendants to hold the Infringing Domain pending the resolution of this Action and not to transfer it to any third parties.

In the absence of the requested relief, even where Super-Krete prevails at trial, it will still have to pursue one or more transferees of the Infringing Domain and suffer loss of business in that period resulting from the infringement of its mark in connection with the use of the Infringing Domain by third parties and the sale of goods via the Infringing Domain by third parties, as is currently done by Concrete Solutions.

Where a plaintiff demonstrates a substantial likelihood of success on the merits of an infringement action, as is the case here, the plaintiff will normally be presumed to suffer irreparable injury and be entitled to preliminary injunctive relief. *E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525 (11th Cir. 1985). "[I]rreparable injury . . . 'follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999), quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 599 (6th Cir. 1991). Generally, in cases involving intellectual property infringement, where a likelihood of success on the merits is demonstrated, not only is irreparable harm presumed, but a preliminary injunction must be issued. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000); s*ee also Cadence Design Sys., Inc.*

1 | *v. Avant! Corp.*, 125 F.3d 824, 827 (9th Cir. 1997).  Any other elemental analysis is
2 | unnecessary.  *See id.*

3 |   Super-Krete has demonstrated that it will suffer irreparable injury if the TRO
4 | is not issued.

5 |     **B.**  **Defendants Face No Irreparable Injury From the Granting**
6 |       **of the Requested Interim Relief**

7 |   If the instant motion is granted, Defendants will suffer no potential injury
8 | whatsoever, much less any irreparable injury.  Defendants registered the Infringing
9 | Domain in 1999 and have, since that time, exercised exclusive ownership and
10 | possession over it.  The new intent to sell the Infringing Domain, to the extent it is
11 | genuine, is certainly not an immediate need of Defendants.  The Infringing Domain
12 | is not losing value.  Defendants may continue using it pending the resolution of this
13 | litigation (albeit at the risk of leading Super-Krete to incur additional damages) or
14 | may simply maintain it. Once this matter is resolved, Defendants may transfer it or
15 | maintain it.  The delay is far from injurious to Defendants and, even if so, strictly a
16 | monetary one, much less so given that Defendants have not sold the Infringing
17 | Domain in the last 11 years.

18 |     **C.**  **The Public Interest Favors Issuance of the Requested**
19 |       **Injunction**

20 |   The issuance of the requested injunction would strongly further a public
21 | interest in protecting markholders from cyberpiracy. Indeed, the enactment of the
22 | Anticybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 1125(d)) was
23 | the Congressional reaction to cybersquatting.  *See* 65 Fed.Reg. 10763, 10764.  One
24 | of the purposes of the ACPA is to "curtail one form of 'cybersquatting' – the act of
25 | registering another's name as a domain name for the purpose of demanding
26 | remuneration from the person in exchange for the domain name." *Schmidheiny v.*
27 | *Weber*, 319 F.3d 581, 582 (3rd Cir. 2003) (citing 145 Cong. Rec. 14715 Nov. 17,

28 |

**EX PARTE APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE
DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

1  1999 (statement of Sen. Lott)); *Shields v. Zuccarini*, 254 F.3d 476, 481 (3rd Cir.

2  2001) (stating that the ACPA made it "illegal for a person to register or to use with

3  the 'bad faith' intent to profit from an Internet domain name that is "identical or

4  confusingly similar" to the . . . name of another person or company").

5  Here, Defendants knew about Super-Krete's products, registered the

6  Infringing Domain name, offered to sell it to Plaintiff for $15,000 (See e-mail from

7  Rod Sadleir to Tracey Holwitz, dated September 23, 2007, attached as Exhibit "F"

8  to the Holwitz Decl. ¶ 11), and are now threatening to sell it to a third party.   Exh.

9  "B," Rome Decl. ¶ 6.  Preventing this conduct is certainly in the public interest as

10  set forth under the above Congressional enactment.   Indeed, the primary goal of

11  trademark law is to protect consumers against deception.   *International Order of*

12  *Job's Daughters v. Linderburg & Co.,* 633 F.2d 912, 918 (9th Cir. 1980).

13  Moreover, the public interest strongly favors issuance of the requested interim

14  relief immediately and without notice. *See also, e.g., Savin Corp. v. Rayne*, 2001

15  U.S. Dist. LEXIS 20581, 14-15 (D. Mass. 2001), stating: "By contrast, no public

16  interest is served by allowing individuals to hold . . . domain names hostage." In

17  fact, the public interest is strongly served by avoiding consumer confusion, which is

18  the primary goal of trademark law. *See International Order of Job's Daughters v.*

19  *Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980).

20  ## V.    THE LIKELIHOOD OF PLAINTIFF'S SUCCESS ON THE

21  ## MERITS IS EXTREMELY HIGH

22  Plaintiff's entitlement to preliminary and permanent injunctive relief is clear

23  under any and all of the four legal grounds alleging statute-based infringement of

24  trademark rights.   Specifically, Plaintiff brought a claim for infringement of a

25  registered mark under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C.

26  § 1125(a), trademark dilution under 15 U.S.C. § 1125(c) and cyberpiracy under 15

27  U.S.C. § 1125(d), the ACPA.

28

1    Thus, Section 1114 concerns "use in commerce [of] any reproduction,
2   counterfeit, copy, or colorable imitation of a registered mark in connection with the
3   sale, offering for sale, distribution, or advertising of any goods or services on or in
4   connection with which such use is likely to cause confusion, or to cause mistake, or
5   to deceive." 15 U.S.C. § 1114(a).

6    15 U.S.C. § 1125(a), addresses "use[] in commerce [of] any word, term,
7   name, symbol, or device, or any combination thereof, or any false designation of
8   origin, false or misleading description of fact, or false or misleading representation
9   of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive
10   as to the affiliation, connection, or association of such person with another person,
11   or as to the origin, sponsorship, or approval of his or her goods, services, or
12   commercial activities by another person."

13    15 U.S.C.§ 1125(c) concerns dilution by blurring and specifically authorizes
14   injunctive relief against the party or parties engaging in activity that blurs or
15   tarnishes the owner's mark: "Subject to the principles of equity, the owner of a
16   famous mark that is distinctive, inherently or through acquired distinctiveness, shall
17   be entitled to an injunction against another person who, at any time after the owner's
18   mark has become famous, commences use of a mark or trade name in commerce
19   that is likely to cause dilution by blurring or dilution by tarnishment of the famous
20   mark, regardless of the presence or absence of actual or likely confusion, of
21   competition, or of actual economic injury."

22    In sum, under each of these theories, the owner must show the existence of a
23   protectable mark employed by the defendant in a manner which creates a likelihood
24   of confusion.  Such confusion can occur when the infringer's sole action was the
25   registering of an infringing domain name. *See Green Prod. Co. v. Independence*
26   *Corn By-Prods. Co.*, 992 F.Supp. 1070, 1080 (N.D. Iowa 1997) (holding that the
27   mere registration of competitor's mark resulted in a likelihood of confusion).

28

1    Here, Super-Krete's principal, John L. Holwitz, obtained the **registered**
2  trademark for the term "Super-Crete" on April 14, 1995, through an assignment
3  from its previous holder, Loren Hale.  While the registration for that registered mark
4  inadvertently lapsed and the mark was re-registered on September 24, 1999, Super-
5  Krete exploited the "Super-Crete" mark continuously since the date of the 1995
6  assignment.

7    The "Super-Crete" mark is a suggestive trademark because it requires
8  "imagination, thought, or perception to link the trademark with the goods offered."
9  *See Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936 n.6 (9th Cir.
10  2002) ("Roach Motel" for insect traps is a suggestive trademark).

11    Furthermore, the Infringing Domain contains the entirety of the Super-Krete
12  mark, "Super-Crete."   The inclusion of the hyphen in Super-Krete's mark is
13  inconsequential under established legal principles.

14    *Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc.* instructs:

15        Thus, the marks are composed of the same words
16        and sound the same when uttered. The fact that Stern's
17        uses a hyphen in its mark, while Shark does not, is too
18        minor a difference to be classified as significant by the
19        Court. It is extremely unlikely that such a minor difference
20        would be noticed by consumers and it is undetectable
21        when the two marks are spoken. *See Grotrian, Helfferich,*
22        *Schulz, etc. v. Steinway & Sons,* 523 F.2d 1331, 1340 (2d
23        Cir.1975); *Toys "R" Us, Inc.,* 559 F.Supp. at 1197 . . . .
24        Therefore, the virtually identical nature of the marks
25        provides strong support for Stern's claim that consumer's
26        will be confused as to the source or origin of Shark's hair
27        products.

28

10

1   *Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc.* 823 F.Supp. 1077, 1086

2   (S.D.N.Y., 1993). The analysis is the same in matters adjudicated before the World

3   Intellectual Property Organization ("WIPO"). *RE/MAX International, Inc. v. Real-*

4   *Net Advertising, Inc.* Claim Number: FA03120002153 ("The omission of the

5   forward slash and the addition of the hyphen and the letters fail to significantly

6   differentiate the domain name from Complainant's RE/MAX trademark pursuant to

7   Policy ¶ 4(a)). *See also Chernow Communications, Inc. v. Kimball*, D 2000-0119

8   (WIPO May 18, 2000) (holding that the use or absence of punctuation marks, such

9   as hyphens, does not alter the fact that a name is identical to a mark).

10          Generally, the likelihood of confusion between two marks is determined

11   through the application of an eight-factor test although not all factors must be

12   considered. *See AMF Inc. v. Sleekcraft Boats, et al.*, 599 F.2d 341, 348-49 (9th Cir.

13   1979) (identifying the eight factor test); *Apple Computer, Inc. v. Formula Intern,*

14   *Inc.* 725 F.2d 521, 526 (9th Cir. 1984) (holding that trial courts are not required to

15   consider all factors). In *GoTo.com*, 202 F.3d at 1205, 1207, the Ninth Circuit found

16   that, in the context of the Internet, only three of the eight *Sleekcraft* factors need to

17   be addressed: (1) the similarity of the marks; (2) the relatedness of the goods or

18   services; and (3) the simultaneous use of the Web as a marketing channel. *See id.*

19   These are known as the "Internet Troika" factors. *Internet Specialties West, Inc. v.*

20   *Milon-DiGiorgio Enterprises, Inc.* 559 F.3d 985, 989 (9th Cir. 2009); *Interstellar*

21   *Starship Svcs., Ltd. v. Epix, Inc.,* 304 F.3d 936, 942 (9th Cir. 2002).

22          Here, the marks are very similar, bar the hyphen, which is an inconsequential

23   difference for the reasons approved by the cases cited above. The services are the

24   same – both companies actively compete with each other in selling concrete sealing

25   products. Holwitz Decl. ¶ 9. Finally, both parties use the internet as a marketing

26   channel for their products. Indeed, Defendants set the Infringing Domain to "point"

27   to the Concrete Solutions website. *See* Exh. "C," Holwitz Decl. ¶ 10; *see also* Exh.

28

1   "D", Rome Decl. ¶ 8 (showing the Super-Krete website used to market its own line
2   of products).

3       Resultantly, Super-Krete has adequately demonstrated that it is probable that
4   it will succeed in demonstrating likelihood of confusion.

5       **A.**    <u>**Super-Krete Is Likely to Succeed on the ACPA Claim**</u>

6       Pursuant to federal statute, district courts are expressly vested with
7   jurisdiction to issue injunctive relief to prevent violation of the Federal ACPA,
8   subsection (d) of 15 U.S.C. § 1125. Specifically, 15 U.S.C. § 1116 provides, in
9   pertinent part, as follows:

10           Section 1116. Injunctive Relief.

11           (a) Jurisdiction; service. The several courts vested with
12           jurisdiction of civil actions arising out of this Act shall
13           have power to grant injunctions, according to the
14           principles of equity and upon such terms as the court may
15           deem reasonable, to prevent . . a violation under
16           subsection . . . (d) of § 43 [15 U.S.C. § 1125].

17   Enacted as part of the Federal ACPA, 15 U.S.C. § 1125(d) is specifically entitled:
18   "Cyberpiracy prevention."

19       Where the court finds that acts of cyberpiracy have occurred, 15 U.S.C. §
20   1116(a) (above) authorizes it to issue appropriate injunctive relief. However, even
21   more equitable relief for cyberpiracy violations is specifically authorized by
22   15 U.S.C. § 1125(d)(1)(C). That subdivision states:

23           (C) In any civil action involving the registration,
24           trafficking, or use of a domain name under this paragraph,
25           a court may order the forfeiture or cancellation of the
26           domain name or the transfer of the domain name to the
27           owner of the mark. (Emphasis added.)

28

***EX PARTE* APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE
DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

1    As will be shown, there is a high probability that Super-Krete will prevail in

2  its cyberpiracy claims against Defendants.

3    This case arises from Defendants' registration of the Infringing Domain with

4  full knowledge of Plaintiff's rights to the corresponding mark, which rights date

5  back to 1985.

6    Under ACPA provisions set out in § 1125(d), a violation is established, *inter*

7  *alia*, if the plaintiff demonstrates that one or more defendants uses a domain name

8  that is identical or confusingly similar to the complaining party's mark with intent to

9  profit. Specifically, 15 U.S.C. § 1125(d)(1) provides:

10    (1) (A) A person shall be liable in a civil action by the owner of a mark . . .if

11  without regard to the goods and services of the parties, that person

12        (i) has a bad faith intent to profit from that mark . . .; and

13        (ii) registers, traffics in, or uses a domain name that -

14            (I)    in the case of a mark that is distinctive at the time of

15                   registration of the domain name, is identical or

16                   confusingly similar to that mark;

17            (II)   in the case of a famous mark that is famous at the time of

18                   registration of the domain name, is identical or

19                   confusingly similar to or dilutive of that mark.

20    "Super-Crete" is a registered mark and is therefore presumptively distinctive.

21    With respect to the "bad faith" elements, the 15 U.S.C. § 1125(d)(1)(B)

22  requires a court to consider nine non-exclusive factors in determining whether a

23  person has engaged in "bad faith intent" to profit from registering, trafficking in, or

24  using a domain name. These factors, as expressly set forth therein, are as follows:

25            (I) the trademark or other intellectual property rights of the

26                person, if any, in the domain name;

27

28

*EX PARTE* **APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE**
**DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that Person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owners or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

*EX PARTE* APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE
DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS

1      (VIII) the person's registration or acquisition of multiple

2      domain names which the person knows are identical or

3      confusingly similar to marks of others that are distinctive

4      at the time of registration of such domain names, or

5      dilution of famous marks of others that are famous at the

6      time of registration of such domain names, without regard

7      to the goods or services of the parties; and

8      (IX) the extent to which the mark incorporated in the

9      person's domain name registration is or is not distinctive

10     and famous within the meaning of subsection (c)(1) of this

11     section.

12   Applying these factors, Super-Krete will be able to demonstrate that

13 Defendants registered the Infringing Domain in bad faith. Specifically, neither

14 Defendant has trademark or intellectual property rights in the Infringing Domain.

15 Indeed, Concrete Solutions does not sell products under the "Super Crete" mark.

16 The Infringing Domain does not consist of either of the Defendants' names.

17 Defendants' sole use of the Infringing Domain consisted of linking to their

18 www.concretesolutions.com website which sells products that compete with the

19 products marketed and sold by Super-Krete.   The intent to divert customers is

20 equally clear, as set forth under section (V), as Defendants link directly to the

21 conceretesolutions.com website which sells competing products.   Further, under

22 section (VI) on August 6, 2010, and by e-mail dated September 23, 2007, Sadleir

23 offered to sell the Infringing Domain to Super-Krete for $15,000.   The use of the

24 Infringing Domain is not a "fair use" within the meaning of the statute as Super-

25 Krete held rights in the "Super Crete" mark long before the registration of the

26 Infringing Domain by Defendants.

27   Super-Krete also satisfies the second element of its cyberpiracy claim. To

28

*EX PARTE* APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE
DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS

1    satisfy this element, the plaintiff must show that the domain name registered by
2    defendants corresponds to a trademark that was distinctive at the time that the
3    defendants registered the domain name and that the domain name is an "identical or
4    confusingly similar to that mark."  At the time that the Infringing Domain was
5    registered by Defendants, they were not doing business under the "Super Crete"
6    mark or selling any products under the "Super Crete" mark.  However, it is beyond
7    reasonable contention that Defendants were aware Super-Krete was marketing and
8    selling products under the "Super Crete" mark.   The mark of Super-Krete is
9    distinctive for all the reasons discussed more fully above.

10        For each of the reasons above, Plaintiff has a strong probability of prevailing
11   on its claim for equitable relief under 15 U.S.C. § 1116 and 15 U.S.C. §
12   1125(d)(1)(C) for violations of the cyberpiracy prevention provisions of 15 U.S.C. §
13   1125(d)(1).   Again, under subdivision (C) of Section 1125(d)(l), Congress has
14   provided the specific remedy so urgently required by Super-Krete here, an order
15   commanding the immediate transfer and return of Super-Krete's domain name.

16   **VI.   SUPER-KRETE REQUIRES THIS TRO TO ISSUE WITHOUT**
17   **ANY PRIOR NOTICE SO AS TO PRESERVE THE STATUS**
18   **QUO ANTE AND PREVENT THE POSSIBILITY THAT**
19   **DEFENDANTS DEPRIVE THE COURT OF ITS ABILITY TO**
20   **ADJUDICATE THIS CONTROVERSY**

21        As shown in the accompanying Declaration of Eugene Rome In Support of *Ex*
22   *Parte* Application For OSC And TRO To Prevent Transfer of The Domain Name
23   <supercrete.com> By Defendants, Super-Krete is seeking a temporary restraining
24   order on an *ex parte* basis to avoid the irreparable injury that will result if
25   Defendants are tipped off as to Super-Krete's efforts and sell the Infringing Domain
26   to a third party, particularly a foreign third party, and thereby preclude both a
27   meaningful adjudication of this matter, the entirety of the relief sought by Super-
28

1    Krete and, ultimately, the ability to ever capture the Infringing Domain.

2         As soon as Defendants receive notice of this application, they could
3    instantaneously transfer the Infringing Domain to a third party located outside the
4    United States in an effort to place it outside of this Court's jurisdiction. If this were
5    to happen, Super-Krete would be deprived of the ability to recover the domain name
6    at least in a timely manner (if not permanently) and would suffer enormous
7    irreparable harm.

8         This court is therefore urged to accept and consider this Application without
9    requiring that Defendants be given prior notice thereof and be given an opportunity
10   to transfer the Infringing Domain without violating a Court order supported by its
11   contempt powers, which is the relief sought by this Application.  Once the Court
12   grants the Application, both Super-Krete and the public will be protected from
13   further and ongoing irreparable injury, and such order would also give the
14   Defendants notice and an opportunity to quickly correct any potentially erroneous
15   ruling, should they elect to appear and contest Super-Krete's claims at a promptly
16   held hearing on the order to show cause re issuance of a preliminary injunction.

17        Super-Krete only seeks to maintain the status quo by requesting the issuance
18   of the preliminary injunction.  "[T]he status quo is the last uncontested status which
19   preceded the pending controversy."  *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316
20   F.2d 804, 809 (9th Cir. 1963), *cert. denied,* 375 U.S. 821 (1963).

21   **VII.  BOND**

22        Super-Krete acknowledges the mandatory language of Fed.R.Civ.P. 65(c)
23   with respect to security. However, in *BellSouth Telecommunications, Inc. v.*
24   *MCIMetro Access Transmission Services,* 425 F.3d 964, 971 (11th Cir. 2005), the
25   court instructed: "This court has stated previously, in dicta, that 'before a court may
26   issue a preliminary injunction, a bond must be posted,' . . ., but it is well-established
27   that 'the amount of security required by the rule is a matter within the discretion of

28

*EX PARTE* **APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE**
**DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

1  the trial court . . . [, and] the court may elect to require no security at all."' Likewise,
2  the Ninth Circuit has said: "The likelihood of success on the merits . . . tips in favor
3  of a minimal bond or no bond at all." *California ex rel Van De Kamp v. Tahoe*
4  *Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).

5       Given that the only financial gain that could accrue to the Defendants by
6  selling the Infringing Domain during the pendency of this Action would be no
7  greater than the funds it would realize from selling the Domain following conclusion
8  thereof, to the extent it vindicates itself in connection with Super-Krete's claims,
9  Defendants will suffer no actual harm from having to maintain ownership of the
10 Infringing Domain.   For these reasons a $100 bond would be more than sufficient,
11 should any bond be imposed at all.

12 **VIII. CONCLUSION**

13      Based upon the foregoing, Super-Krete has shown that it meets at the least
14 one of the two tests followed by the Ninth Circuit for the issuance of injunctive
15 relief. Super-Krete has shown a significant likelihood that it will succeed an all four
16 of its statutory trademark claims, even though prevailing on only one would be
17 sufficient to warrant full relief. Notwithstanding this strong showing, Super-Krete
18 needs only to show that success is "probable" or that it has raised "serious
19 questions" and that the balance of hardships tips sharply in its favor.   That it has
20 surely done.

21      Accordingly, Super-Krete respectfully requests that the Court grant this
22 Application on the terms as prayed for in the accompanying proposed TRO and
23 OSC lodged with this Court. Additionally, following a hearing on the order to show
24 cause, Super-Krete prays that the Court will issue a preliminary injunction granting
25 similar relief pending a full adjudication of this matter on the merits, and, per the
26 requirements of Fed.R.Civ.P. 65(d), make the following findings in support of such
27 order:

28

*EX PARTE* **APPLICATION FOR OSC AND TRO TO PREVENT TRANSFER OF THE
DOMAIN NAME <SUPERCRETE.COM> BY DEFENDANTS**

1        a.      That Plaintiff Super-Krete has demonstrated a substantial likelihood of

2   success on the merits of its claims under 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 15

3   U.S.C. § 1125(c) and 15 U.S.C. § 1125(d);

4        b.      That Super-Krete would suffer irreparable harm if the injunctive relief

5   is denied;

6        c.      That the threatened injury to Super-Krete outweighs whatever damage

7   any defendant would suffer if an injunction were granted; and

8        d.      The issuance of preliminary injunctive relief would not be a disservice

9   to the public interest.

10       e.      Finally, Super-Krete requests that it be awarded such other and further

11   relief to which it may be justly entitled.

12

13   Dated:  April 12, 2010                    ROME & ASSOCIATES, A.P.C.
                                               Eugene Rome
14

15

16                                             By:  _____
                                                        EUGENE ROME
17                                             Attorneys for Plaintiff SUPER-KRETE
                                               INTERNATIONAL. INC.
18

19

20

21

22

23

24

25

26

27

28

                                               19